UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MAINE WOODS PELLET CO., LLC, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 1:17-cv-00446-JCN |
| | ) |
| WESTERN WORLD INSURANCE COMPANY, | ) |
| | ) |
| Defendant | ) |

**ORDER ON MOTION FOR RECONSIDERATION**

Plaintiff alleges Defendant breached an insurance contract by applying three separate deductibles, rather than a single deductible, to an insurance claim submitted as the result of mechanical difficulties with Plaintiff's heat and power plant.

On the parties' summary judgment motions, the Court granted partial summary judgment in favor of Defendant, concluding the record established that at least two deductibles applied to Plaintiff's losses, but a genuine factual dispute remained as to whether a third deductible applied. (Summary Judgment Order, ECF No. 38.) Plaintiff moves for reconsideration of the Court's summary judgment order. (Motion, ECF No. 49.) Following a review of the record and after consideration of the parties' arguments, the Court denies Plaintiff's motion for reconsideration.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff owns and operates a wood pellet production facility that includes a heat and power plant. The cogeneration plant is comprised of traditional components such as a boiler, heat exchanger, turbine and condenser, but the system uses cyclopentane as the working fluid rather than water. The condenser is a shell and tube heat exchanger with cooling water flowing through 2,410 U-shaped tubes and vaporized cyclopentane flowing through the shell and around the tubes.

Beginning on December 20, 2016, the cogeneration plant experienced reduced efficiency. On January 8, 2017, Plaintiff identified water in the cyclopentane side of the system and instituted brief periodic shutdowns to remove relatively small quantities of water. On January 17, 2017, larger quantities of water entered the system and Plaintiff shut down the cogeneration plant. Plaintiff performed a bubble test, which revealed leaks from two fractured tubes. The two tubes were plugged, and no further leaks were detected. The cogeneration plant restarted on January 30, and between January 30 and March 9, Plaintiff's system was operational with the exception of brief daily or weekly shutdowns to remove small quantities of water.

On March 9, 2017, Plaintiff again shut down the cogeneration plant after discovering large quantities of water in the cyclopentane side of the system. A bubble test and a borescope revealed that one tube was sheared off. The tube was plugged, and no further leaks were detected. The cogeneration plant began operating on March 12, and

---

[1] The Court's summary judgment order contains a more complete summation of the record. (See ECF No. 38.)

2

between March 12 and March 20, Plaintiff's system was operational with the exception of brief daily shutdowns to remove small quantities of water.

On March 20, 2017, Plaintiff again shut down the cogeneration plant for scheduled cleaning and passivation procedures and for inspection of the cyclopentane side of the condenser to assess the cause of the difficulties. Unlike during the bubble tests, Plaintiff drained the cyclopentane side while the water side remained pressurized. Plaintiff identified a discolored tube, which leaked when it was moved. The damaged tube was plugged, and Plaintiff installed modifications designed by the manufacturer to reduce tube vibration. The cogeneration plant restarted on March 25, 2017. After the installation of the modifications, the brief periodic shutdowns to remove water have become unnecessary, and a very small amount of water typically is removed once per year.

Defendant determined that three separate losses had occurred because the tubes broke at three separate times and the plant operated between the events. Defendant paid Plaintiff $159,711.53 after applying a $100,000 deductible for the loss involving the major shutdown that began on January 17. Defendant paid Plaintiff $67,413.62 after applying a $100,000 deductible for the loss involving the major shutdown that began on March 9. Although Defendant concluded that a covered loss occurred in the amount of $93,877.70 for the shutdown that began on March 20, Defendant did not pay Plaintiff for that loss because the damage did not exceed the $100,000 deductible. Had Defendant applied only one deductible for the whole period, it would have paid Plaintiff an additional $193,877.70.

Plaintiff filed a complaint in state court, and Defendant subsequently removed the case to federal court based on diversity of citizenship jurisdiction. (Notice of Removal,

3

ECF No. 1.) The parties filed cross motions for summary judgment, a joint stipulated statement of material facts, and separate statements of material facts. (ECF Nos. 21, 23, 24, 25, 27, 29.) After oral argument, the Court denied Plaintiff's motion and granted in part and denied in part Defendant's motion. (Summary Judgment Order, ECF No. 38.) The Court concluded that the record established that at least two deductibles applied, but a factual dispute remained as to whether two or three deductibles applied. (*Id.*)

## LEGAL STANDARD

The granting of a motion for reconsideration of a final judgment is "an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). To prevail on a motion for reconsideration of a final order, a party must demonstrate (1) the existence of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice. *Int'l Ass'n of Machinists & Aerospace Workers v. Verso Corp.*, 121 F. Supp. 3d 201, 217 (D. Me. 2015). Nonfinal orders remain open pending final judgment, so the Court has wide discretion to revisit prior interlocutory rulings. *Geffon v. Micrion Corp.*, 249 F.3d 29, 38 (1st Cir. 2001); *Mumme v. U.S. Dep't of Labor*, 150 F. Supp. 2d 162, 165 (D. Me. 2001).

A motion to reconsider is proper if the Court "misapprehended some material fact or point of law," but is "not a promising vehicle" for "rearguing theories previously advanced and rejected," *Palmer*, 465 F.3d at 30, or for "advance[ing] arguments that could and should have been presented to the district court prior to its original ruling." *Villanueva v. United States*, 662 F.3d 124, 128 (1st Cir. 2011).

4

## DISCUSSION

In this district, a motion to reconsider an interlocutory order "shall be filed within 14 days from the date of the order unless the party seeking a reconsideration shows cause for not filing within that time." Dist. Me. Loc. R. 7(f). "Cause for not filing within 14 days from the date of the order includes newly available material evidence and an intervening change in the governing legal standard." *Id.* Given the date the Court issued the summary judgment decision (June 27, 2019), Defendant argues the motion, filed on January 10, 2020, is untimely.

Plaintiff raised the prospect of filing the motion during a telephonic conference much earlier, on July 23, 2019, but the motion would be untimely even if filed on that date. Because Plaintiff has not established newly available material evidence,[2] an intervening change in the governing legal standard, or any other reason the motion could not have been filed within the fourteen-day period, Plaintiff's motion could be denied as untimely filed. The Court, however, may revisit or revive at any time an issue decided in an interlocutory order, including an issue decided at summary judgment. *Latin Am. Music Co. Inc. v. Media Power Grp., Inc.*, 705 F.3d 34, 40 (1st Cir. 2013). Because final judgment has not entered in the case and because the scope of the trial will be informed by the summary judgment order, to the extent Plaintiff contends the Court made a legal error in the summary judgment

---

[2] Plaintiff suggests reopening the summary judgment record to introduce evidence concerning Defendant's calculations of business income losses; Defendant contends that evidence was available prior to the summary judgment filings.

decision, judicial economy militates in favor of correcting any legal error before trial. The Court, therefore, will consider the merits of the motion.

Plaintiff's principal argument is based on the asserted inability to distinguish at summary judgment between business income losses and other types of losses, such as repair costs, because the parties stipulated to the total amounts for each of the three claims but did not include the breakdown of the categories within the totals. The Policy provides that Defendant "will pay for the actual loss of Business Income . . . due to the necessary 'suspension' of your 'operations' during the 'period of restoration'." (Policy at 31, ECF No. 21-1.) As with the other coverage provisions, however, "[t]he loss or damage must be caused by or result from a Covered Cause of Loss," and is subject to the applicable exclusions and limitations. (*Id.* at 31–32.) Therefore, the legal analysis of the lost business income is similar to Plaintiff's other types of losses: there is no coverage for lost business income resulting from design defects generally, but coverage exists for lost business income resulting from a mechanical breakdown, even when the ultimate cause of the mechanical breakdown is a design defect.[3] As with the other types of costs, therefore, the

---

[3] Plaintiff reiterates its contention that the exclusion for design defects "has no applicability" because Exclusion B.3.c provides for an exception: "But if an excluded cause of loss. . . results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." (Motion at 5–6; Policy at 45.) The term "Covered Cause of Loss" is modified by the Equipment Breakdown Coverage to include accidents, and the parties agree that the only type of accident that is relevant in this case is a mechanical breakdown. Read as a whole, therefore, the insurance policy excludes coverage for losses that result from design defects, "but if a [design defect] . . . results in a [mechanical breakdown], [Defendant] will pay for the loss or damage *caused by that [mechanical breakdown]*." Because the Policy does not state that if a breakdown occurs, Defendant will pay for the loss or damage *caused by that design defect*, the Equipment Breakdown Coverage does not render the design defect exclusion of "no applicability."

Although Plaintiff notes that the Court did not explicitly quote the ensuing loss language of Exclusion B.3.c, the Court summarized the Equipment Breakdown Coverage and quoted the similar ensuing loss language in the Equipment Breakdown Coverage modifying Exclusion B.2.d. Plaintiff has not shown that the Court

ultimate issue embedded in the summary judgment motions is the number of independent mechanical breakdowns that occurred.

Plaintiff notes that when Defendant calculated the business income losses, it included the reduced efficiency and lower operating time for the entire period between late December 2016 and late March 2017 and divided those losses into three shorter periods by assigning them to the three claim numbers. The business income loss allocated to the first claim number apparently included the lower efficiency and operating time of the cogeneration plant from December 20, 2016 to January 31, 2017, despite the fact that the major shutdown did not occur until January 17 and ended on January 30, 2017. Likewise, the business income loss attributed to the second claim number evidently included the lower efficiency and operating time of the cogeneration plant from February 1 to March 19, 2017, even though the second major shutdown occurred between March 9 to March 12, 2017. The business income loss assigned to the third claim number included the lower efficiency and operating time of the cogeneration plant from March 20 to March 25, 2017, which corresponds to the dates of the third major shutdown period.[4]

---

incorrectly applied the B.3.c or B.2.d exclusions as modified in slightly different ways by the equipment breakdown provisions. (See Summary Judgment Order at 16, ("The policy excludes all damages caused by design defects, but the equipment breakdown provision covers mechanical breakdowns, even when caused by a design defect"). It is a breakdown, not a design defect, that triggers coverage and the corresponding deductible.

[4] Defendant maintains that it included the events beginning in December because it assumed some of the reduction in efficiency was caused by one of the fractured tubes discovered during the January 17 major shutdown. (Response at 6, ECF No. 54.)

Plaintiff argues in part that Defendant's conclusion that Plaintiff experienced covered losses throughout the disputed period (i.e., before and in between the three major shutdowns) is inconsistent with the application of three deductibles.  That is, Plaintiff argues that given its loss calculation, Defendant cannot argue that Plaintiff suffered three separate covered losses.

Plaintiff's argument is unpersuasive.  Plaintiff's reasoning most resembles a waiver or estoppel argument.  *See generally*, *Kraul v. Maine Bonding & Cas. Co.*, 559 A.2d 338, 338–39 (Me. 1989).  The Court, however, is not convinced that Defendant's loss calculation, even if more generous to Plaintiff than required under the policy, should preclude Defendant from concluding that multiple independent breakdowns occurred when the plant operated close to full-time between those events.  Defendant promptly asserted its position on the number of breakdowns and deductibles and firmly maintained that position before and long after the estimation of the business income losses.

Furthermore, under the policy, Plaintiff is entitled to recover business income losses only if a covered cause of loss occurs; the existence of a business income loss does not establish that a covered cause of loss occurred.  Pursuant to the policy, if the cogeneration plant suffers a mechanical breakdown, the lost business income resulting from that breakdown might be recoverable, but lost business income is not recoverable without a mechanical breakdown.  Similarly, the existence of some measurable decline in business income does not establish that a mechanical breakdown has occurred.  Defendants' loss calculation, therefore, does not support a reconsideration of the summary judgment decision.

In sum, because Plaintiff has not established any misapprehension of fact or mistake of law, the Court is not persuaded that reconsideration of the Court's order on the parties' cross motions for summary judgment is warranted.[5]

## CONCLUSION

Based on the foregoing analysis, the Court denies Plaintiff's motion for reconsideration.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 19th day of June, 2020.

---

[5] The parties' arguments, including the positions asserted during the telephonic hearing on the motion, revealed that the relevance of the loss calculation to the issues that remain for trial could be a disputed issue. The Court's conclusion that Plaintiff's argument regarding the loss calculation does not warrant reconsideration of the summary judgment decision shall not be construed as a ruling on the relevance at trial of the loss calculation evidence. The Court will consider any evidentiary-related issues in advance of or at trial.