UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MAINE WOODS PELLET CO., LLC, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )    1:17-cv-00446-JCN |
| | ) |
| WESTERN WORLD INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant | ) |

**ORDER ON DISCOVERY AFTER IN CAMERA REVIEW**

Plaintiff alleges Defendant breached an insurance contract by applying three separate deductibles, rather than a single deductible, to an insurance claim submitted as the result of mechanical difficulties with Plaintiff's heat and power plant. After discovery closed, the parties filed cross motions for summary judgment; the Court granted partial summary judgment in favor of Defendant, concluding the record established that at least two deductibles applied to Plaintiff's losses, but a genuine factual dispute remained as to whether a third deductible applied. (Summary Judgment Order, ECF No. 38.) Because a factual dispute remained as to whether the tube breakage identified in the third major shutdown was caused by an earlier tube breakage, the Court allowed the parties to conduct further discovery on that remaining factual issue. (Procedural Order, ECF No. 44.)

During the subsequent discovery process, in response to Plaintiff's request for documents, Defendant withheld or redacted certain documents, citing the attorney-client

and work product privileges and the limited scope of the authorized discovery.  Defendant submitted the redacted and withheld documents to the Court for an in camera review.

Plaintiff seeks production of the withheld material generated before August 22, 2017, which is the date Plaintiff maintains the parties began to prepare for litigation. (Discovery Memorandum, ECF No. 50.)  Defendant provided a privilege log of the materials it withheld, (ECF No. 53-1), and submitted to the Court copies of the documents generated before August 22, 2017.

Following a review of the record, the disputed documents, and after consideration of the parties' arguments, the Court concludes that Defendant is required to produce the draft reports of its expert investigator and the correspondence with the investigator regarding the status of his work and the claims.  The Court concludes that Defendant is not required to produce the remainder of the disputed documents.

## LEGAL STANDARD

Unless the scope of permissive discovery is limited by a court order, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ."  Fed. R. Civ. P. 26(b)(1). Information "need not be admissible in evidence to be discoverable," and proportionality is determined considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

The party asserting a privilege to withhold documents responsive to a legitimate discovery request bears the burden of demonstrating the applicability of the privilege. *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 69 (1st Cir. 2011). The standard requires "sufficient information to allow the court to rule intelligently on the privilege claim." *Marx v. Kelly, Hart & Hallman*, *P.C.*, 929 F.2d 8, 12 (1st Cir. 1991). Assuming the withholding party makes an adequate showing that the documents in question are subject to a privilege, the party seeking production may assert that an exception to the privilege applies under the circumstances. *Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st Cir. 2012).

Recognizing that a party seeking production often will not be able to prove an exception to a privilege without having access to the document(s) in question, a party can request that the court conduct an *in camera* review in order to insure the proper balance is struck between one party's assertion of privilege and another's need for relevant documents. *Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984). "[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court." *United States v. Zolin,* 491 U.S. 554, 572 (1989). The standard is not stringent. *Id.* If it appears that the asserted privilege "is subject to legitimate dispute, the desirability of *in camera* review is heightened." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d at 70.

## DISCUSSION

**A.     Privileges**

"The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383,

3

389 (1981). "By safeguarding communications between attorney and client, the privilege encourages disclosures that facilitate the client's compliance with law and better enable him to present legitimate arguments when litigation arises." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 23 (1st Cir. 2011). The elements of the privilege are:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002) (quoting 8 J.H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)); *see also*, *Rich v. Fuller*, 666 A.2d 71, 74 (Me. 1995).[1]

The work product doctrine, codified for purposes of pretrial discovery within Rule 26, protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," unless the materials are otherwise discoverable and the party seeking production "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Even if a court orders the documents or tangible things to be produced, "it must protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

---

[1] To the extent there are legal differences between the state and federal versions of the privilege, the federal rules incorporate the state law governing privileges in any federal civil case in which the rule of decision is provided by state law. See Fed. R. Evid. 501.

4

The work product doctrine does not extend to "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for nonlitigation purposes," even if the materials were prepared by a lawyer and reflect "legal thinking." *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 30 (1st Cir. 2009) (quoting Fed. R. Civ. P. 26 advisory comm.'s note (1970)). The issue is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." 8 C. Wright, A. Miller, Federal Practice and Procedure § 2024 (3d ed. 2020).

In the context of some insurance claims, the line between materials produced in anticipation of litigation and materials created in the ordinary course of business while adjusting claims can be difficult to discern. "A minority of federal courts have held that all materials located in an insurance claims adjuster's files must be deemed to have been collected or created in anticipation of litigation because it is in the nature of the insurance business to always be preparing for litigation," but "[t]he overwhelming majority of federal courts . . . have maintained [a] fact specific approach . . . ." *S.D. Warren Co. v. E. Elec. Corp.*, 201 F.R.D. 280, 283 (D. Me. 2001). In this district, "unless and until an insurance company can demonstrate that it reasonably considered a claim to be more likely than not headed for litigation . . . the documents in its claims file that predate this realization were prepared in the ordinary course of business, i.e., the business of providing insurance

coverage to insureds." *Id.* at 285; *see also*, *Precision Airmotive Corp. v. Ryan Ins. Servs., Inc.*, No. 2:10-MC-244-JHR, 2011 WL 148818, at *7 (D. Me. Jan. 17, 2011).[2]

A review of the privilege log and the documents reveals that some of the redacted and withheld documents might be discoverable. For example, some portions of the disputed documents were withheld because they relate to the reserves Defendant set for the matter at different times in the claims process.[3] The amounts and timing of reserve decisions can be relevant to certain claims, such as bad faith denials of coverage, but the authority on the discoverability of reserves is mixed. *Compare e.g.*, *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, No. CV 07-10930-NMG, 2009 WL 10692782, at *4–5 (D. Mass. July 1, 2009), *with McCray v. Allstate Ins. Co.*, No. 3:14-CV-02623-TLW, 2015 WL 6408048, at *5 (D.S.C. Oct. 22, 2015). Here, while the Court understands that Plaintiff has not asserted a bad faith claim, the reserves arguably could provide some insight as to whether Defendant believed one or multiple deductibles applied.

Most of the disputed materials relates to Defendant's claim that the draft reports of Defendant's engineering investigator, John Imperatore, and the communications with him

---

[2] Unlike some other privileges in which the rules of the privilege are governed by state law when the rule of decision for the federal case is provided by state law, *see* Fed. R. Evid. 501, to the extent there are legal differences between the state and federal versions of the work product doctrine in the context of discovery, *compare e.g.*, *S.D. Warren*, 201 F.R.D. at 285, *with Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 17 n.5, 754 A.2d 353, 358, the federal version of the doctrine governs because Rule 26 codified the work product doctrine for discovery purposes in federal court. *See S.D. Warren*, 201 F.R.D. at 282.

[3] "Loss reserves are estimates of amounts insurers will have to pay for losses that have been reported but not yet paid, for losses that have been incurred but not yet reported, and for administrative costs of resolving claims." *Atl. Mut. Ins. Co. v. Comm'r*, 523 U.S. 382, 384 (1998); *see also, UNUM Life Ins. Co. v. United States*, 897 F.2d 599, 601 (1st Cir. 1990) (noting that often times an insurance "company (perhaps following state regulators' properly conservative accounting practices) [will] put aside (as a reserve) considerably more money to pay future benefits than it actually needs").

regarding the status of the claim and the status of the investigation, are within the work product privilege or are otherwise not discoverable because the investigator has been designated as an expert witness in this case. Rule 26 requires mandatory disclosure of individuals a party intends to call as expert witnesses at trial and may require the party to disclose a report summarizing the witnesses' opinions, qualifications, compensation, and a list of other cases in which the witness recently provided expert testimony. Fed. R. Civ. P. 26(a)(2). The Rule also permits a party to depose anyone identified as an expert but restricts permissive discovery of (1) prior drafts of the required expert witness disclosure report, (2) most communications between the expert and a party's attorney, and (3) facts or opinions of retained experts who are not expected to testify at trial. Fed. R. Civ. P. 26(b)(4).

Rule 26(b)(4), however, applies only to materials prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(4) advisory committee's note ("It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial . . ."). Although the investigation report from the spring of 2017 was prepared by an individual later deemed a testifying expert, it is not equivalent to an expert report described in Rule 26(b)(4). *See Rankin v. Liberty Mut. Ins. Co.*, 50 F.3d 1, 1995 WL 131390 at *1 n.2 (1st Cir. 1995) (designating an individual with relevant prior work or knowledge as an expert witness at trial "did not, as [the party] seemingly contends, insulate the [witness's] firsthand knowledge of the facts from discovery under the 'work product doctrine,' nor cloak it with other protections which apply solely to expert opinions developed in anticipation of litigation"). Instead, the information was prepared by an

engineer investigator who was assisting in the adjustment of the claim, long before litigation was reasonably anticipated. Materials generated by an insurance company are prepared in the ordinary course of business until the point at which an insurance company can demonstrate that it reasonably considered a claim to be more likely than not headed for litigation. *S.D. Warren*, 201 F.R.D. at 285. Defendant has not shown that Mr. Imperatore's drafts and communications should be viewed differently than the other materials in the claims files, which were generated in the ordinary course of claims investigation and processing.

The disputed materials (e.g., the amount of the reserves, draft expert reports) that are not within a privilege would be discoverable if the documents are within the scope of limited scope of discovery authorized at this stage of the proceedings. *See infra*.

**B.     Limited Scope of Discovery**

The ordinary scope of permissive discovery may be circumscribed by a court order. *See e.g.*, Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows . . ."); Fed. R. Civ. P. 26(b)(2) (permitting a court to issue orders putting "limitations on frequency and extent" of discovery); Fed. R. Civ. P. 26(c)(1)(D) (permitting orders "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters"); *U.S. ex rel. Duxbury v. Ortho Biotech Prod., L.P.*, 719 F.3d 31, 37 (1st Cir. 2013) ("We review the district court's order limiting the scope of discovery for abuse of discretion"). Following decision on the parties' cross motions for summary judgment, the Court reopened discovery "on the factual issues the Court identified in its decision and order on the parties' motions for summary judgment."

(Procedural Order at 1.) The summary judgment order determined that "a factual issue exists as to whether the March 20 fracture was caused in some way by the March 9 breakage," which factual issue prevented the Court from reaching a legal conclusion about "whether the March shutdowns constitute one or two accidents and thus one or two mechanical breakdowns under the policy." (Summary Judgment Order at 21.)

Some of the disputed documents can reasonably be considered as beyond the scope of the Court's order and therefore not discoverable. For example, even if the information concerning the timing and amounts of Defendant's reserve decisions were within the scope of ordinary permissible discovery in this case, the information is not probative of the remaining mechanical or technical question on which the Court reopened discovery.[4] The drafts of the expert's investigative report, however, could have some bearing on the remaining factual question. Similarly, Defendant's communications with the investigator about the draft reports and the status of the claims have some relevance, including for impeachment purposes. Because that information is within the scope of discovery and not privileged, Plaintiff is entitled to the production of the expert-related documents.[5]

---

[4] The reserve amounts could potentially be relevant to the remaining issue in this case if, for example, Defendant had at any time set one reserve for the January 2017 shutdown and one reserve for the two March 2017 shutdowns. The in camera review, however, revealed that the structure and amounts of the reserve decisions have no probative value for the remaining mechanical or technical issue.

[5] The in camera review confirmed that the redactions of certain personal contact information—to which Plaintiff evidently does not object if legitimate—were in fact limited to that purpose. The in camera review also confirmed that the withheld information related to potential subrogation claims against the designer or manufacturer was either privileged or not within the scope of discovery at this stage.

## CONCLUSION

Based on the foregoing analysis, the Court orders Defendant to produce to Plaintiff unredacted versions of the draft reports prepared by and Defendant's communications with John Imperatore prior to August 22, 2017. Defendant is not required to produce the other withheld or redacted documents.[6]

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 28th day of August, 2020.

---

[6] The documents Defendant submitted corresponding to the last four entries of the privilege log contained redactions in the "native" version. The Court did not locate the unredacted version of the documents. The Court assumes the submission of the redacted version was inadvertent, and orders Defendant to submit an unredacted version of the documents. If the Court determines that the documents contain additional information to which Plaintiff is entitled in accordance with the analysis set forth herein, the Court will issue a supplemental order. Otherwise, the analysis set forth herein will govern Defendant's further production of documents.