UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MAINE WOODS PELLET CO., LLC, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 1:17-cv-00446-JCN |
| ) | |
| WESTERN WORLD INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant ) | |

**DECISION AND JUDGMENT
ON MOTIONS FOR JUDGMENT ON A STIPULATED RECORD**

Plaintiff alleges Defendant breached an insurance contract by applying three separate deductibles, rather than a single deductible, to an insurance claim submitted as the result of mechanical difficulties with Plaintiff's heat and power plant.

On the parties' summary judgment motions, the Court granted partial summary judgment in favor of Defendant, concluding the record established that at least two deductibles applied to Plaintiff's losses, but a genuine factual dispute remained as to whether a third deductible applied. (Summary Judgment Order, ECF No. 38.) The parties filed cross motions for judgment on a stipulated record. (Def.'s Motion, ECF No. 78; Pl.'s Motion, ECF No. 79.) The remaining issue is whether the third breakdown was caused by the second breakdown and therefore subject to a single deductible under the policy.

Following a review of the record and after consideration of the parties' arguments, the Court concludes that two deductibles apply to Plaintiff's losses. The Court, therefore, grants Plaintiff's motion for judgment and denies Defendant's motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.    The Mechanical Difficulties

Plaintiff owns and operates a wood pellet production facility that includes a heat and power plant. The cogeneration plant is comprised of traditional components such as a boiler, heat exchanger, turbine and condenser, but the system uses cyclopentane as the working fluid rather than water. The condenser is a shell and tube heat exchanger with cooling water flowing through 2,410 U-shaped tubes and vaporized cyclopentane flowing through the shell and around the tubes.

Beginning on December 20, 2016, the cogeneration plant experienced reduced efficiency. On January 8, 2017, Plaintiff identified water in the cyclopentane side of the system and instituted brief periodic shutdowns to remove relatively small quantities of water. On January 17, 2017, larger quantities of water entered the system and Plaintiff shut down the cogeneration plant. Plaintiff performed a bubble test, which revealed leaks from two fractured tubes (hereinafter "Tube 1" and "Tube 2"). The two tubes were plugged, and no further leaks were detected. The cogeneration plant restarted on January 30, and between January 30 and March 9, Plaintiff's system was operational, except for brief daily or weekly shutdowns to remove small quantities of water.

---

[1] The Court's summary judgment order contains additional details concerning the undisputed facts and the legal issues the Court has resolved. (Summary Judgment Order, ECF No. 38.)

On March 9, 2017, Plaintiff again shut down the cogeneration plant after discovering large quantities of water in the cyclopentane side of the system. A bubble test and a borescope revealed that one tube was sheared off (hereinafter "Tube 3"). The tube was plugged, and no further leaks were detected. The cogeneration plant began operating on March 12, and between March 12 and March 20, Plaintiff's system was operational, except for brief daily shutdowns to remove small quantities of water.

On March 20, 2017, Plaintiff again shut down the cogeneration plant for scheduled cleaning and passivation procedures and for inspection of the cyclopentane side of the condenser to assess the cause of the difficulties. Unlike during the bubble tests, Plaintiff drained the cyclopentane side while the water side remained pressurized. Plaintiff identified a discolored tube, which leaked when it was moved (hereinafter "Tube 4"). The damaged tube was plugged, and Plaintiff installed modifications designed by the manufacturer to reduce tube vibration. The cogeneration plant restarted on March 25, 2017. After the installation of the modifications, the brief periodic shutdowns to remove water became unnecessary, and a very small amount of water typically is removed once per year.

**B.     The Insurance Policy**

The commercial property insurance policy covers several risks but also contains exclusions for, among other things, design defects and mechanical breakdowns. Plaintiff, however, also purchased optional coverage for equipment breakdowns. The additional coverage modified the exclusions in the base policy to provide for coverage if an excluded cause of loss results in an "accident," defined as "a fortuitous event" that damages covered

3

equipment. (Policy, ECF No. 21-1 at 83–85.) The "event must be" one of several listed risks; the only one of relevance here is a "mechanical breakdown." *Id.*

The equipment breakdown coverage also specified that for purposes of the number of applicable deductibles, "[i]f an initial 'accident' causes other 'accidents,' all will be considered 'one accident'" and "[a]ll 'accidents' that are the result of the same event will be considered 'one accident.'" *Id.* at 86.

### C.   The Dispute Concerning the Number of Deductibles

Defendant determined that three separate losses had occurred because the tubes broke at three separate times and the plant operated between the events. Defendant paid Plaintiff $159,711.53 after applying a $100,000 deductible for the loss involving the major shutdown that began on January 17. Defendant paid Plaintiff $67,413.62 after applying a $100,000 deductible for the loss involving the major shutdown that began on March 9. Although Defendant concluded that a covered loss occurred in the amount of $93,877.70 for the shutdown that began on March 20, Defendant did not pay Plaintiff for that loss because the damage did not exceed the $100,000 deductible. If Defendant had applied one deductible for the whole period, Defendant would have paid Plaintiff an additional $193,877.70.

Plaintiff filed a complaint in state court, and Defendant subsequently removed the case to federal court based on diversity of citizenship jurisdiction. (Notice of Removal, ECF No. 1.) The parties filed cross motions for summary judgment, a joint stipulated statement of material facts, and separate statements of material facts. (ECF Nos. 21, 23,

24, 25, 27, 29.) After oral argument, the Court denied Plaintiff's motion and granted in part and denied in part Defendant's motion. (Summary Judgment Order, ECF No. 38.)

The Court concluded the summary judgment record established three separate mechanical breakdowns for deductible purposes because the multiple tube breakages resulted in three significant shutdowns for repairs, each occurring weeks or more apart with virtually full operation of the plant between the incidents. (*Id.* at 18–19.) Applying the "one accident" provision to the summary judgment record, the Court concluded at least two deductibles applied because there was no basis to conclude that the fractures in Tubes 1 and 2 resulting in the first major shutdown caused the breakage in Tube 3 and the second major shutdown. (*Id.* 20–21.) The Court could not determine at summary judgment whether two or three deductibles applied, however, because a factual dispute remained as to whether the breakage of Tube 3 and the second major shutdown caused the leak in Tube 4 discovered during the third major shutdown. (*Id.*)

After the Court denied Plaintiff's request for reconsideration and upheld the summary judgment determinations, (Order, ECF No. 62), the parties submitted supplemental stipulations of fact and sought judgment on a stipulated record. (Suppl. Stipulation, ECF No. 72; Motions, ECF Nos. 78, 79.)

**LEGAL STANDARD**

Unlike motions for summary judgment, "[i]n a case submitted for judgment on a stipulated record, the district court resolves disputed issues of material fact." *Bhd. of Locomotive Engineers v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 31 (1st Cir. 2000) (citing *Boston Five Cents Sav. Bank v. Secretary of the Dep't of Hous. and Urban Dev.*,

768 F.2d 5, 11–12 (1st Cir.1985).  Because such motions amount to trying issues of fact without a jury, "the Court makes findings of fact on any disputed factual issues in accordance with Federal Rule of Civil Procedure 52." *Casey v. Town of Yarmouth*, No. 2:19-CV-00392-GZS, 2021 WL 217601, at *1 (D. Me. Jan. 21, 2021).

**REMAINING FACTUAL ISSUES AND FINDINGS**

The parties agree that when cyclopentane turbulence caused the condenser tubes to vibrate and bend side-to-side it placed stress on the tubes near the support plate because the tubes cannot move at that location.  (Suppl. Stipulation ¶¶ 2, 4, 5, 9.)  The outermost tubes in each row were subject to greater movement because those tubes did not have another on both sides to limit the degree of their movement.  (*Id.* ¶ 3.)  When a tube lacks a neighbor on one side, it generally will deflect in that open direction to a greater degree when exposed to cyclopentane turbulence, which places greater stress near the support plate on the opposite side of the tube, the side on which the outer tube has a neighbor.  (*Id.* ¶¶ 6, 12.)

Tube 1, Tube 2, and Tube 3 were the outermost tubes in their rows, and they all fractured near the support plate.  (*Id.* ¶¶ 2, 6, 7, 13, 14.)  Tube 4 was originally the second tube in a row, immediately adjacent to and inward from Tube 3, but after March 9 when Tube 3 broke completely free near the support plate, Tube 4 became subject to the same excessive movement as an outermost tube.  (*Id.* ¶¶ 14, 17, 18, 20, 21.)  Tests confirmed that Tube 4 did not have a leak during or before the March 9 major shutdown when Tube 3 broke, but during the March 20 major shutdown, a fracture near the support plate was found on Tube 4 on the opposite side as the direction of Tube 3.  (*Id.* ¶ 11.)

An expert witness, John Imperatore, testified during a deposition that all of the tubes could move due to the presence of the cyclopentane turbulence, but "[i]n the case of the end tubes there is further movement permitted and subjects the end tubes to a more rapid failure rate than tubes that are not on the end." (Imperatore Deposition, ECF No. 73 at 13:1, 13:15–18; *see also* 49:5–25.) According to Mr. Imperatore, the relationship between the development of leaks and the greater movement of the end tubes was that it "could accelerate the process. It doesn't cause the failure, but having a tube on an end will increase a rapidity at which the fatigue loading and failure occurs." (*Id.* at 13:24–14:2.)

Based on the parties' stipulations and the record evidence, including Mr. Imperatore's expert reports and deposition testimony, the Court finds the following facts:

1. Following the March 12 restart of the plant, the complete break that had occurred on March 9 in Tube 3 caused Tube 4 to begin to exhibit excessive movement when exposed to cyclopentane turbulence relative to Tube 4's movement prior to March 9 and relative to the movement of the other tubes that had neighboring tubes on both sides attached to the support plate.

2. All four of the leaks that developed at the plant occurred in tubes that exhibited a greater degree of movement as a result of the absence of a neighboring tube on both sides attached to the support plate.

3. After the March 9 failure of Tube 3 and the March 12 restart, the excessive movement in Tube 4 significantly accelerated the rate at which Tube 4 suffered fatigue and developed a fracture that leaked.

4. Considering the added stress on Tube 4 following the Tube 3 failure, and given the fact that none of the thousands of other tubes with two attached neighboring tubes developed leaks, Tube 4 likely would not have developed a leak before the design defect was remedied on March 20 if Tube 3 had not suffered a complete break.

### REMAINING LEGAL ISSUE

At summary judgment, the Court determined that the three major shutdowns constituted three mechanical breakdowns and thus potentially three accidents for deductible purposes because the tubes developed leaks at different times separated by weeks or more and the plant operated at nearly full capacity between the major shutdowns. (Summary Judgment Order at 18–19; *see also*, Order on Motion for Reconsideration.)  The remaining legal issue is whether the second and third breakdowns are covered by the "one accident" provisions of the policy.  For purposes of calculating the number of deductibles, "[i]f an initial 'accident' causes other 'accidents,' all will be considered 'one accident.'  All 'accidents' that are the result of the same event will be considered 'one accident.'" (Policy at 86–87.)

To explain the operation of the relevant policy provisions, Defendant offered the example of an electrical surge that damages multiple separate pieces of equipment at the same time.  (*See e.g.*, Dotson Deposition at 47–49, ECF No. 21-3.)  Although the use of the word "same event" in the second sentence could arguably imply a requirement that the events occur at essentially the same time, Defendant's simultaneity argument is unpersuasive given the "one accident" definition.  For one accident to cause another

accident, the first must occur before the second. Because the only requirement in the first sentence of the definition is causality, temporal proximity or separation is not determinative of whether one accident caused another accident.[2]

Because the Court finds that the Tube 4 fracture would not have occurred without the Tube 3 complete fracture, the Court concludes that the second breakdown was a cause of the third breakdown and thus the two breakdowns constitute one accident under the policy. If Tube 3 had remained attached in place, Tube 4 would have continued to move in a similar way to the thousands of other tubes with neighbors on both sides, and Tube 4 was therefore exceedingly unlikely to have fractured before the design defect was resolved permanently on March 20.

Defendant argues that it was the cyclopentane turbulence, not the Tube 3 fracture, that caused the Tube 4 fracture. That argument is unpersuasive, however, because it assumes the two factors are mutually exclusive. The Court agrees that the excessive cyclopentane turbulence as a result of the design defect was an underlying cause of all the tube fractures, but that does not mean there was an insufficient causal relationship between the Tube 3 and Tube 4 fractures for purposes of the "one accident" provisions. *See e.g.*, *Burrage v. United States*, 571 U.S. 204, 212 (2014) ("it is natural to say that one event is the outcome or consequence of another when the former would not have occurred but for

---

[2] Even though the closeness in time and space is not decisive, the closeness in time and space between two events is often relevant to causation, just as the Court noted in the summary judgment order that closeness in time and space can be relevant to determining the number of mechanical breakdowns. Unlike the fractures in Tubes 1, 2, and 3, which were not directly adjacent in the same rows and were separated by nearly a month and a half, Tube 4 was located right next to Tube 3 and the fracture was discovered just one week after the plant restarted.

9

the latter.  It is beside the point that the [event] also resulted from a host of other necessary causes").

The Tube 3 fracture was a substantial cause of the Tube 4 fracture because it significantly elevated Tube 4's susceptibility to the turbulent conditions and Tube 4 would not have failed if Tube 3 had not failed first.  In the absence of more specific language regarding exclusivity of causes or temporal proximity of accidents, the record supports a finding of a causal connection between the Tube 3 and Tube 4 fractures.  *C.f. Contributing causes; Policy provisions*, 10 Couch on Insurance § 139:31 (2020) (in other accident insurance contexts, "[i]n the absence of provisions explicitly addressing the point, it is not generally necessary that the accident be the sole cause of death or injury in order to establish the liability of the insurer").[3]

In sum, although the plant suffered three separate mechanical breakdowns, two deductibles applied to Plaintiff's losses because the fracture discovered during the March 20 shutdown and the fracture that resulted in the March 9 shutdown constitute "one

---

[3] The Court's legal conclusion is not inconsistent with Mr. Imperatore's statement that a tube's status as an outermost tube "doesn't cause the failure" but only increases the rapidity of the failure.  In context, the statement suggests that the lack of a neighboring tube would not by itself be expected to cause fractures as the excessive turbulence created the damaging conditions in the first instance.  Mr. Imperatore's opinion regarding the significance of the excessive turbulence does not control the assessment of the "one accident" provisions of the policy.  Where the contributing cause is not highly attenuated and there is nothing in the contractual language or the parties' arguments requiring a different causality analysis, there is no reason to delve further into other causality concepts.  *See Burrage*, 571 U.S. at 212 ("Where there is no textual or contextual indication to the contrary" phrases like "results from" or "because of" are regularly interpreted "to require but-for causality").

accident" for purposes of the deductibles. Plaintiff, therefore, is entitled to payment for the loss suffered as the result of the shutdown related to the Tube 4 leak.[4]

## CONCLUSION

Based on the foregoing factual findings and analysis, on the remaining issue (i.e., Plaintiff's claim for the loss resulting from the March 20, 2017, shutdown), the Court grants Plaintiff's motion for judgment and denies Defendant's motion for judgment. Because one deductible applies to the March 9, 2017, and March 20, 2017, shutdowns, and because Plaintiff's loss resulting from the March 20 shutdown totals $93,877.70, for which loss Defendant has not paid Plaintiff, the Court enters judgment in favor of Plaintiff in the amount of $93,877.70.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 31st day of March, 2021.

---

[4] The parties also raise other issues that are not directly within the scope of the factual issue identified by the Court in the summary judgment order. For instance, Plaintiff reiterates its arguments that all the shutdowns constituted one prolonged and ongoing breakdown and thus was subject to only a single deductible, while Defendant contends that the third major shutdown was voluntary and was not fortuitous, and therefore is not covered under the policy. The Court has considered the arguments and is not persuaded that the arguments warrant a different result.